1934-13 Northern Iowa and 1934-87 Northern Iowa, FishDish v. VeroBlue Farms USA, et al., and FishDish v. Broadmoor Financial. Mr. Delman, good morning. We're ready when you are. Good morning, Your Honor. I hope you can hear me fine. Just fine. Excellent. Good morning, Your Honors. May it please the Court. My name is Nathan Delman, and I am here on behalf of FishDish, LLC, a preferred shareholder of VeroBlue Farms. The issue before this Court is whether district courts have an obligation to hear appeals from a bankruptcy court. A bankruptcy court's jurisdiction to enter a final order as an Article I court depends on a litigant's ability to appeal these final orders to an Article III court. This is Judge Kobus. Has any court ever so held before, or would we be the very first court to accept this argument? If we're talking about the argument of constitutionality of the equitable mootness doctrine, you would be the first court. How many have actually considered the argument and rejected it at this point? I believe only the Third Circuit, Your Honor. Okay, thank you. Counsel, this is Judge Graz. I have a question along those lines as well. Yes. It seems to me this case kind of puts the Court in a quandary because we don't normally consider issues that weren't raised below. And on the other hand, I don't see any binding Eighth Circuit authority that has recognized the equitable mootness doctrine. That's correct. Well, it's a pure question of law. And so it does put it in. Constitutionality is a serious question of the equitable mootness doctrine. And I do believe, and Fishdish does assert, that equitable mootness has serious constitutional infirmities. This Court does not need to go all the way to ruling equitable mootness as unconstitutional in order for Fishdish to get the relief it is seeking. Counsel, this is Judge Loken. Is Latches, then, an unconstitutional equitable intrusion on Article 3? I think the distinction between Latches and equitable mootness is that we're dealing here with bankruptcy court jurisdiction and district court supervision. Um, bankruptcy court jurisdiction comes from statute. The Marathon Oil case in 1981 when the Supreme Court ruled the 1978 Act as unconstitutional and forced Congress to come up with a way to make bankruptcy court jurisdiction constitutional. So every bankruptcy court case arises in the district court and must be referred to the bankruptcy court. And at any point in time, the district court can withdraw the reference. So I really think that Latches is different in terms of the time when a district court can employ federal common law has been, is getting more and more hemmed in by the Supreme Court, specifically in this most recent one in our 28-J letter, the Rodriguez v. FDIC, where Justice Gorsuch really said... You say that, Counsel, but I think that's a very controversial and almost unsupportable assertion. Very well, Your Honor. The Supreme Court takes their cases one at a time. And, uh, we're not talking about federal common law here. We're talking about equitable, equitable rules applied by all courts. But, but this is, uh, this is, equitable mootness is something that's read into the bankruptcy code, which is not there. There's two sections. But you're, you're reading it into like some of the other courts. We don't, we don't have to read it in as mootness. When you say the word moot, everybody says, oh my gosh, article three, we're talking constitutionality. I, I, I'd like, I'd like to hear, uh, what, what claim it, I don't understand what claim your wants, your client wants to assert, um, with respect to, you know, without this, this, this attempt to avoid the merits, uh, always, always leaves me a very, very, uh, suspicious. Both sides now are trying to avoid the merits. One, one wants to talk mootness. One wants to talk standing. Nobody wants to talk about what's your claim. What's your basis for your client's objection? We would love to talk, pardon? We would love to talk the merits. That's what, that's what this case is all about is we didn't get a chance to brief them. I don't understand what, what your client as a, as a preferred shareholder, what's the basis for your client's objection to the Broadmoor claim? Well, your honor, if you look at joint appendix 1211, it goes into the unsecured creditors committee's challenge notice. There was a lot of behavior between Broadmoor, Alder, and very blue farms, which never got investigated by the bankruptcy court. Because that's gone, they've settled your client has to have your client has to have its own basis, its own showing of injury. In fact, to, to challenge that. The, the, the injury is that we, that our shares were eliminated by the confirmation order. We had a $6 million investment that was wiped out. How does that affect the, I'm talking about the claim objection order. That's half your appeal. Yes. Most of what you seem to talk about. Yes. So the Broadmoor claim objection was, was wrongfully denied. We didn't have an opportunity to investigate, to investigate these relationships that are brought up in the challenge notice. Where, where, where can I go in the, in the record, which is far too vast. It seems to me, where do I go to find your clients specific objections and request for evidentiary development in the, for the bankruptcy court? Just give me a page citations. Well, I don't have the page citation readily available for our claim objection, but I could certainly provide that after the argument. Which, which you're saying, I, we didn't get any discovery. We didn't get any investigation. I can't, I can't get a handle on, on what it was, what it was. Your client was how, how objecting to the Broadmoor claim would have saved your clients that would have improved your clients. It not would not would have avoided an impairment of your clients. If the Broadmoor claim was recharacterized or subordinated, it would have left a recovery for equity in this case. Where do I go to find, to confirm that? I can certainly provide that after the argument. But if you look at, if you just look at the distribution in the plan, and in terms of the money that's available and the money that went to Broadmoor and the total amount of unsecured claims, if the money that went to Broadmoor did not go to Broadmoor, it would have paid these real estate taxes in full. It would have paid the unsecured creditors committee in full, I mean, the unsecured creditors, sorry, in full, and it would have left a recovery for the equity holders. And that's precisely what we were seeking to do in the bankruptcy court. In the bankruptcy court, improperly barred discovery on all parties. Counsel, would you address Judge Kobus here, how your part, how your client is an aggrieving person in this case? I think that's an essential part of standing here. If you would, if you would, if you would walk through why you think you have standing. Absolutely, your honor. We have standing because our investment was wiped out by the confirmation order. So I know that Alder brought up, well, first Alder brought up the shareholder standing rule, but that is a little bit of a distraction because this was not any sort of derivative rights that we were trying to assert here. We weren't trying to assert the rights of the corporation. We were trying to assert our own rights as fish dish, as the shareholder. And then in terms of the pecuniary interest test, there are a couple other cases brought up that say, well, we were several steps removed because this would have to happen and that would have to happen. But as the district court said, that's conflating a possibility of recovery with the absolute harm that was caused to us by the confirmation order. There's a couple other cases brought up, like the people's case, where it's a chapter seven debtor who was going after the chapter seven trustee. And that's very distinguishable from what's going on here because a chapter seven debtor isn't filing a chapter seven bankruptcy to get some sort of economic benefit. They're doing it to discharge debts. When you're a shareholder and you're investing in a company, you're doing it ideally to get some sort of return on your investment. A chapter seven debtor went after the trustee saying, well, in order, well, I didn't think you settled my employment discrimination claim for enough. That's the people's case. It's cited by Alder. But that was several steps removed, and this one is not because the chapter seven, she wasn't even a debtor in possession. The chapter seven trustee would have had to get a really large claim, a really large settlement, and would have to pay all the unsecured creditors in full and would have had to pay the debtor. And that's really very distinguishable from this case where it's a shareholder completely losing its investment. Similarly, the Opportunity Financial v. Kelly case from 2016 from this court found that these lenders in a Ponzi scheme didn't have standing. But that was very different as well because these lenders, they weren't even creditors in the case. They actually came out ahead on the Ponzi scheme. So it was very difficult to see how they would get any recovery in the case. I think they'd be limited at most if they were a defendant in a litigation and they had to pay a settlement payment, they would get some sort of claim under 502H. So that's why I think that we certainly have standing here. I think the district court was correct to rule that we have standing. And the alternative, if this court does believe that equitable movement does have some merit to it, I would really stress that it's only available in very limited circumstances. Really in complex chapter 11 where there's a lot of parties and intricately managed agreements that would be undone by the relief that's sought. And that's simply not what's happening here. This is a payment plan. This is a money judgment essentially that we're going for. The debtor said this case had to be confirmed quickly so that the reorganization would be successful. Counsel, you argued in your briefs that the plan was not substantially consummated. Yes. Does the record reflect if those facts have changed at all? In other words, has the plan changed since that time? And if so, does that matter? I don't believe that debtors ever assumed management of the business, which is a requirement under substantial consummation. There's no evidence in the record this was ever reorganized. In fact, when we were preparing for these arguments, I saw a news report that these really a liquidation plan and equitable mootness flies out the window because equitable mootness is only there to preserve a reorganization and not a liquidation. Well, haven't our bankruptcy appeal panels applied equitable mootness in cases under chapter 7? They have. And I think that that is an example of why equitable mootness has run amok from what it was originally conceived as, which was something that was limited to times when there have been specifically, usually outside investors that have put money into the reorganized debtor after confirmation. And that's really what equitable mootness is trying to protect. Even in the Information Dialogues case in 1981, which talks about a $400,000 investment after confirmation. All the cases that really put a lot of emphasis on not wanting to unravel the plan talks about, well, we're going to affect the success of the plan. We're going to knock the props out under the plan. We're going to make it so that they went through the chapter 11. They got their confirmation. They're back in business. New money's coming in. There's no allegation here that Variable Farm has new vendors that they're working on. There's no allegation whatsoever that this aquaculture operation was recommenced whatsoever at all. And I don't believe that appellees will make that representation. I see that I'm going into my rebuttal time. I'd like to reserve the rest of my time for rebuttal, if possible. Thank you. All right. Thank you. Mr. Childers, are you first up? Yes, Your Honor. May it please the Court. Bankruptcy standing is narrow. It requires an appellant to show that there's some financial interest that was harmed by the order that's being appealed. Counsel, I have to say that your citation to our discussion of the aggrieved person was based on an earlier decision in Marlar which said the test is really impairment of rights. That's what you say, which is a far, far, for me, a far easier concept to grasp in bankruptcy context than aggrieved person, which is sort of employment discrimination talk. It is impairment of rights. And it seemed, and why isn't, why hasn't the, as the, hasn't the preferred shareholder interest been clearly impaired? Indeed, it's been wiped out. The, the test in Marlar was first and foremost, Your Honor, the, that there was a financial interest at stake. And then the three prongs in Marlar set forth the ways in which to evaluate whether there was a financial interest. In this particular case, the, the shareholder's interest, all the shareholders of Vera Blue Farms, USA, Inc., were impaired prior to the bankruptcy filing because the debtor was insolvent. What we're talking about here is whether the confirmation order impaired the rights of the shareholders. And in order to impair that right, the, the shareholders would have to show that there was some value to those shares. The bankruptcy court held. Counseling, that's again, you're, you know, you're, you're grabbing it for an article three way out of the merits. If, if they, what you're saying is their, their claim had, they had no, no merit. They're, they never, they could never prove that the confirmation order had any impact on their rights. Well, fine. Let's, you know, that, that's a, that's an issue of fact and law. And the courts deal with all the time. It doesn't, the fact that they don't have any damage doesn't turn them into a phantom litigant. Well, I, I think in fact it, it does, your honor, the. Well, give me a case that says that this, this goes, that the lack of the, the inability to prove a claim goes all the way to, you never should have been in court in the first place. Well, for example, an opportunity finance, the court said that it is necessary in bankruptcy to limit collateral appeals because of the nature of bankruptcy. And that by limiting the standing of persons to only those who have a financial interest, it promotes that promotes that doctrine. As, as I say, the bankruptcy court found in this case that it would be almost impossible for fish dish to argue that it had a financial interest because the debtor was so insolvent that all of the shareholders were way, way out of the money. Um, and so the standing rules are designed to prevent the, uh, uh, appeals by people who have no financial interest in the bankruptcy case. And so that's why I believe the standing here simply doesn't exist. Your honor, the time set aside for my argument has expired. If there are no more questions, I will retire in favor of Mr. Lamb. All right, good. Mr. Lamb. Good morning. Thank you, Judge. My name is Eric Lamb. I'm a lawyer from Iowa and I represent all the acquired limited, which is the plan sponsor that provided the funds to enable the debtor to consummate the plan. On the article three issue, your honors, may I please go back to where we started, which is when a notice of appeal was filed by fish dish. Counsel, it may be the audio system, but, but you're talking faster than, than it's allowing me to pick it up. All right. The notice of appeal, your honor, elected to proceed to the bankruptcy appellate panel, the bet, which of course was an article one tribunal. So right off the bat, the appellant deliberately chose to go to an article one court. We moved the case back to the district court and article three court. And I will point your honor to docket number 14 in the district court docket, which was a motion filed by fish dish on June the 20th, 2019. That was a consent motion by which fish dish asked the district judge to direct the parties to brief one and only one issue, namely equitable witness. Fish dish did not wish the district court to consider any 1129, 1123 arguments. The magistrate on June 25th with docket number 18 adopted that briefing schedule. So that is twice now that fish dish deliberately chose not to brief any substantive issues. And then in a district court, your honor fish dish did not seek any state. Now, the reason that is important is when considering a state request, the court must consider the likelihood of success on the merits. So both sides will have to brief their 1129, 1123 arguments. Fish dish, again, primitively chose not to do that. When the case came to this court, again, fish dish chose not to seek any state. If they had asked for a state, then a three judge administrative panel of this court, we have to again consider the likelihood of success on the merits and look at the 1129, 1123 issue. By my count, your honors, that is two article three tribunal, four article three judges that fish dish deliberately chose not to bring any substantive issues to bear. So I would argue- Counsel, since there was no state, is the plan, I know the position is the plan was substantially consummated at the time of briefing. Has there been any additional activities related to the plan since briefing? Does the record reflect that? Your honor, two responses. The record does not reflect that. However, if we were to go outside the record, I will represent to this court that the assets were sold in December 2020 to a company called Natural Shrimp. It is a publicly traded company. The SEC 10Q for quarter ending September 30th, 2020 is publicly filed. That's nothing sinister. Now, as far as Mr. Dorman says, well, gee, you know, nobody's heard other than the direct parties to this appeal. What about the shareholders that invested in Natural Shrimp? Again, if we go outside the record, I can tell you that Natural Shrimp solicited investors to invest in this particular purchase. What about those 10Q public who bought and sold their shares? How are we going to unsell and untrade those shares? So the Article 3 issue and then Judge Grass asked about the 8th Circuit precedent on equitable movements. I will point to the 1981 Information Dynamics case. It is a published decision and it specifically dealt with plan confirmation and the court specifically dismissed the appeal because claims have been paid and so on and so forth. The only argument that Fish Dish may have is, oh, that case cited to old bankruptcy group 805. Well, that's true. Counsel, is that case cited in the briefs? Yes, Information Dynamics, Your Honor. All right. It is in our brief. It is 662 Federal 2nd 475. I'll go back to the 805 issue. It is an old rule. I got it. However, why did the panel cite to that rule? It cited to that rule for this proposition that it is a reflection of the, quote, important policy of bankruptcy law that court approved reorganizations be able to go forward in reliance of such approval unless a state has been obtained. That is a published decision, 3-0, and I will respectfully submit that this panel is bound by that panel's decision. So if I may summarize, Your Honor, the bottom line is this. This is a plan that was supported by 95% of the voting creditors. Before the case was filed, there were about $40 million of capital investment. The credit facility was $50 million. Post-confirmation, $12 million have been put in. By any stretch of imagination, you know, in my little world in Iowa, this is a big case. This is not one of those small Chapter 7 cases. And last but not least, I would ask the court to notice that we held a two-day confirmation hearing before Judge Collins. The U.S. trustee was present during the entire two days. As you all know, the U.S. trustee is an arm of the Department of Justice. They were there to police any potential bankruptcy fraud and so on and so forth. They did not object. Whatever metaphor you want to use, the train has left the station. You cannot put the toothpaste back in the tube. You cannot put Humpty Dumpty back on the wall. I would ask that the District Court's order of dismissal be affirmed. Thank you. Counsel, I have a procedural question regarding the standing argument. The District Court held in favor of standing. Was a cross-appeal filed challenging that decision of the District Court? Your Honor, the cross-appeal was not filed. However, I have two points. The Eighth Circuit's internal operating procedure specifically says that a party may do not need to file a cross-appeal unless the party is attacking the District Court's judgment. I'm not attacking the District Court judgment. I'm asking the District Court judgment be affirmed. The second point is the Eighth Circuit has always held that so long as you are just trying to preserve the judgment, even if you lost below, so long as that issue is in the record below, you can urge any ground to support to preserve the District Court judgment. So that's what I have in response, Judge. Thank you. Counsel, let me ask a question that's sort of off the track here. Would it be your position that the confirmation order would preclude a common law fraud claim by Fish Dish against either your client or Broadmoor for the kind of torts that were sort of hinted at in the UCC report? Absolutely. I would say, Your Honor, to a decision public. I didn't understand. Again, your audio is so bad for me. You said absolutely yes or no. It would bar that kind of action. It would. I would cite 465 F Sub 3rd 633. 465 F Sub 3rd 633, a June 2020 decision from the Northern District of Texas by Judge Starr in Variglou v. Wolf, and specifically at pages 667 to 670, at which Judge Starr discussed how the bankruptcy discharge obtained by 1141 would bar any kind of third-party claim. Well, that makes it for me a much more troublesome application of equitable mootness. I thought you might say that, and frankly, it was an honest answer. It was not to your client's advantage, for me at least. I try the best to be honest, Judge. Thank you. I would defer to Mr. Weed, please. May it please the Court. Judge Loken, you asked about the merits of Fish Dish's claim. I would refer you to Joint Appendix 2914 and 2915. That is testimony of Ken Lockard, and you can find throughout the docket arguments that Fish Dish makes, but this is the only testimony. This is the proffer they made at the second day of the confirmation hearing, and Ken Lockard's testimony you'll see amounts to him saying he called Broadmoor, and Broadmoor shares a phone number and an address with a company called Lodgeworks. That does not amount to equitable subordination facts or recharacterization facts. That is something that the Bankruptcy Court noted when the Bankruptcy Court heard their arguments earlier, and at Joint Appendix 2504, you will see where Judge Collins says there's a big difference between saying we have a lot of questions and we have evidence of something that would support a claim, and Judge Collins also said shortly after that at Joint Appendix 2506 that he has some comfort that the Unsecured Creditors Committee investigated this claim fully and did not find a claim that was worth bringing. That is on the merits. I want to also refer you to the Ritson case, the recent Supreme Court case that gives us a road map to determining whether an order is a final order for purposes of Bankruptcy Court appeal, and Ritson says you look at whether something is a discrete judicial unit, and I want to refer you to Bankruptcy Rule 3007. Counsel, there was a lot of Eighth Circuit law to that effect before Ritson. Correct. They just applied the rather well-established principle to the issue at hand. Correct. Ritson did not use the three finality factors, though, so I don't know if those are still alive or not. Maybe they are, maybe they aren't, but Ritson said you look at whether something is a discrete procedural unit, and the advisory comments to Rule 3007, which deals with objecting to a proof of claim, say that an objection to a proof of claim is a contested matter. So it's a separate contested matter that gives rise to discovery under Bankruptcy Rule 9014, and it is its own little case litigated within the broader umbrella of the bankruptcy case. A bankruptcy claim objection is a discrete procedural unit, just like Ritson was saying. And I'm out of time, Your Honor, unless you have any questions. Very good. Mr. Delman, then, for rebuttal. Thank you very much. First off, just to hit the last point first, the Ritson case, a discrete procedural unit, I don't believe a claims objection, remained open to attack by the other shareholders. Keep in mind there was originally a committee of 71 shareholders that were objecting to this plan that was wrongfully barred by the court, that was the subject of a separate appeal. In terms of Mr. Lockhart's testimony, there was no discovery allowed. The Bankruptcy Court barred all discovery, so we didn't have any evidence. There was no evidence to bring to the court, because the court wrongfully barred discovery. In terms of Mr. Lamb's argument that we chose to go to the BAP, I'd ask the court to disregard that, because that wasn't brought up in any of the briefs. In terms of the sale to Natural Shrimp, that makes everything simple. That throws all the equitableness out the window. We're just talking about money now. There's no reorganization. We don't care about the Natural Shrimp shareholders. They can keep it. The money that they bought the assets for becomes the bankruptcy estate now, and relief is completely practicable. Besides that, I would just like to reiterate that the Bankruptcy Court committed a lot of reversible errors, that entering a planned confirmation order is among the Bankruptcy Court's most significant responsibilities, and allowing district courts to abdicate their obligation to hear live disputes when relief is available improperly undercuts a litigant's right to Article III review  insulates Bankruptcy Courts from Article III supervision. All Fish Dish wants is a hearing on the merits. And there was one of the merits that was heard in the district court. It was Statement of Issues No. 2, and it was regarding whether or not the Baltimore claim remained open to attack from other parties on the finality. So there was a substantive issue that we did ask the district court to rule on, and the district court found that the Bankruptcy Court committed a reversible error. This appeal is not equitably moot because relief is readily available, no third parties will be harmed, it will not jeopardize the success of the plan, and we urge this court to reverse the district court and allow a full hearing on the merits. Thank you.